UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LIQUE, LLC | CIVIL ACTION |
| VERSUS | NO. 20-1162 |
| GIANFRANCO NICOLOSI AND SHANNON-NICOLOSI, LLC | SECTION M (3) |

**ORDER & REASONS**

Before the Court is a motion by defendants Shannon-Nicolosi, LLC ("SNL") and Gianfranco Nicolosi (together, "Defendants") to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.[1]  Plaintiff Lique, LLC ("Lique") responds in opposition.[2]  Having considered the parties' memoranda, the record, and the applicable law, the Court denies Defendants' motion.

**I.    BACKGROUND**

This case concerns the breach of a settlement agreement.  Lique is a limited liability company whose sole member is Liliam Carrete, a citizen of Brazil.[3]  Nicolosi, a citizen of Louisiana, is the sole member of SNL.[4]  On March 14, 2014, Lique and SNL entered into a management agreement to purchase, renovate, develop, manage, and sell real estate in the New Orleans area.[5]  Lique provided the capital and SNL acted as Lique's manager and agent.[6]

Pursuant to the management agreement, Lique provided to SNL funding for the development of a vacant lot located at 337 Elmeer Avenue in Metairie, Louisiana.[7]  Nicolosi

---

[1] R. Doc. 39.
[2] R. Doc. 42.
[3] R. Doc. 17 at 1.
[4] *Id.* at 2.
[5] *Id.* at 3.
[6] *Id.* at 4.
[7] *Id.*; R. Doc. 35-1 at 2.

provided to Lique a proposal for the construction of a new home on the lot.[8] Lique sent funds to Nicolosi weekly based on Nicolosi's representations regarding the work that was performed that week and the work planned for the next week.[9] Nicolosi's representations included false statements of progress, fake construction photographs, and eventually a fake purchase agreement.[10] Unfortunately, little to no work was performed on the project.[11]

When the house did not sell under the purported purchase agreement, Carrete traveled to New Orleans and discovered that the construction had not progressed beyond framing the structure.[12] At that point, Lique had sent Nicolosi $300,000 for construction, plus the money that was used to purchase the property.[13] An accounting of the money sent and the costs associated with the limited work that had been done showed that Nicolosi had stolen $167,600 from Lique.[14] Upon discovery of the conversion, Lique demanded immediate repayment from SNL and Nicolosi.[15] Nicolosi admitted to misappropriation of the funds and agreed to repay Lique.[16]

The settlement was reduced to writing and signed by Carrete on behalf of Lique and by Nicolosi on behalf of himself and SNL.[17] The settlement agreement recounted the facts that led to the misappropriation and the repayment terms which required Nicolosi to repay $167,600 to Lique in installments on the 15th day of each month pursuant to the following schedule:

- Starting in September 2018: $400 in 12 installments
- Starting in September 2019: $500 in 12 installments
- Starting in September 2020: $600 in 12 installments
- Starting in September 2021: $800 in 12 installments
- Starting in September 2022: $1,000 in 12 installments

---

[8] R. Doc. 35-1 at 2.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 2-3.
[13] *Id.* at 3.
[14] *Id.*
[15] R. Doc. 1 at 4-5.
[16] *Id.* at 5.
[17] R. Doc. 17-1.

- Starting in September 2023: $1,500 in 36 installments
- Starting in September 2026: $2,000 in 37 installments.[18]

In the event of Nicolosi's default or failure to timely tender the installment payments without prior written notice or grace given by Lique, Lique was permitted to accelerate all of the remaining installments and declare the entire unpaid balance immediately due and payable.[19] Any attempt by Nicolosi to make late or nonconforming payments that were already past due could not reactivate his right to make periodic payments, and any failure to tender payments timely constituted a material breach by Nicolosi.[20] The agreement contained an integration clause stating that it "sets forth the entire understanding between the Parties and no amendment hereto shall be valid unless made in writing and signed by the Parties."[21]

Beginning in September 2018, Nicolosi made five $400 payments (September 2018, October 2018, November 2018, January 2019, and February 2019).[22] He has not made any payments since February 2019.[23] Lique alleges that Nicolosi's failure to make the required payments constitutes a material breach of the settlement agreement which allows Lique to accelerate the remaining balance due, requiring Nicolosi to pay in full the outstanding debt of $165,600 ($167,600 minus the $2,000 Nicolosi has already repaid).[24] Because neither Nicolosi nor SNL made any payments in response to Lique's multiple demands, Lique filed this action for breach of contract seeking $165,600, plus interest and costs.[25]

---

[18] *Id*. at 1.
[19] *Id.* at 2.
[20] *Id.*
[21] *Id.*
[22] R. Doc. 17 at 7.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 7-8.

On June 25, 2021, Lique filed a motion for summary judgment designating July 15, 2021, as the submission date.[26] Local Rule 7.5 requires that a memorandum in opposition to a motion be filed no later than eight days before the noticed submission date, which in this case was July 7, 2021. Defendants did not file an opposition on or before this date. Thus, on July 12, 2021, after determining that Lique's motion had merit, the Court granted summary judgment in Lique's favor and entered judgment awarding to Lique $165,600, plus interest.[27]

## II.   PENDING MOTION

On August 9, 2021, Defendants filed the instant motion to alter or amend the judgment pursuant to Rule 59(e) arguing that they failed to oppose the motion for summary judgment because the time frame for doing so was too short and defense counsel was sick between July 5 and 11, 2021, which prevented him from filing an opposition.[28] Defendants also argue that this Court should have searched the record for any evidence of what Nicolosi's testimony would have been had he been deposed prior to Lique's filing its motion for summary judgment.[29] To that end, Nicolosi attaches an affidavit in which he claims that he signed the settlement agreement under duress without the benefit of legal counsel.[30] According to Nicolosi, Lique threatened him with criminal prosecution, possible deportation, and a ruined reputation if he did not sign the settlement agreement.[31] He also claims that he was not given sufficient time to review the document and did not understand that he was signing it both on behalf of SNL and in his personal capacity.[32]

In opposition, Lique argues that this Court should not consider the statements in Nicolosi's self-serving affidavit because Defendants have delayed this litigation and refused to participate

---

[26] R. Doc. 35.
[27] R. Docs. 37 & 38.
[28] R. Doc. 39-1 at 5.
[29] *Id.* at 6-7.
[30] R. Doc. 39-2 at 2-3.
[31] *Id.*
[32] *Id.*

4

meaningfully in discovery.[33] Lique points out that defense counsel was uncooperative in scheduling Nicolosi's deposition, and that after Nicolosi was subpoenaed, his counsel told Lique's counsel that Nicolosi was unable to appear for the deposition, and the deposition was never rescheduled.[34] Lique argues further that Nicolosi's statements regarding duress are false because, prior to entering into the settlement agreement, Nicolosi admitted in correspondence to Lique's counsel to improperly converting its money and he proposed the settlement agreement to Lique's counsel.[35] Twelve days after Nicolosi made the proposal to Lique's attorney and after some back-and-forth with Lique's attorney, Nicolosi executed the settlement agreement with his neighbor and a friend serving as witnesses.[36] Lique contends these facts demonstrate that Nicolosi had able time to consider the settlement agreement, understood it, and did not sign it under duress.[37] Further, Lique argues that, if defense counsel were indeed sick when the opposition was due, he should have informed opposing counsel and the Court of the issue in a timely manner and obtained an extension of time to respond, which he did not do.[38] In fact, he waited until 28 days after the judgment was entered to file the instant motion which discloses for the first time his purported illness.[39]

### III.   LAW & ANALYSIS

#### A. Rule 59(e) Standard

A Rule 59(e) motion to alter or amend the judgment calls into question the correctness of a judgment.[40] *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). Under the rule, a

---

[33] R. Doc. 42 at 3-6.
[34] *Id.* at 5-6.
[35] *Id.* at 13-14.
[36] *Id.*
[37] *Id.*
[38] *Id* at 10.
[39] *Id.*
[40] Defendants state that their motion is also made, in the alternative, under Rule 60(b). Rule 59(e) applies, however, because the motion was made within 28 days of the judgment. *See* Fed. R. Civ. P. 59(e).

movant must show that amendment is necessary (1) to correct a manifest error of law or fact upon which the judgment is based; (2) to consider newly discovered evidence that was previously unavailable; or (3) to address an intervening change in the controlling law. *Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020). "A Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction." *In re Self*, 172 F. Supp. 2d 813, 816 (W.D. La. 2001). The motion "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019) (quoting *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)). Indeed, when "a party seeks to upset a summary judgment on the basis of evidence she failed to introduce on time," the district court must weigh "the need to bring litigation to an end [against] the need to render just decisions on the basis of all the facts." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). In doing so, courts consider "the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case, whether the evidence was available to the non-movant before she responded to the summary judgment motion, and the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened." *Id.*; *see also Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004). And while a district court has considerable discretion to grant or deny a Rule 59(e) motion, *see Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1993), the grant of such a motion is an "extraordinary remedy that should be used sparingly." *Indep. Coca-Cola Emps.' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc.*, 114 F. App'x 137, 143 (5th Cir. 2004).

B. Analysis

In this case, the relevant considerations do not justify upsetting the judgment. First, Defendants have not presented compelling reasons for their failure to respond timely to the motion for summary judgment. Defendants claim that their counsel was ill from July 5 and 11, 2021, which prevented him from timely opposing the motion.[41] Lique filed the motion on June 25, 2021, and the opposition was due on July 7, 2021.[42] Defense counsel could have worked on an opposition in the nine days after the motion was filed but before he allegedly fell ill. Moreover, after falling ill, because he knew that an opposition was due on July 7, 2021, defense counsel could have contacted opposing counsel and the Court to ask for a continuance. Even if he was so physically disposed as to be unable to make a telephone call when he was sick, he could and should have done so as soon as he was well on July 11, 2021, which was before this Court granted the motion for summary judgment on July 12, 2021. Instead of informing the Court and opposing counsel at the earliest time possible, defense counsel waited 28 days after the entry of judgment to file the instant motion claiming an illness that is not supported by an affidavit of defense counsel or any other evidence of medical treatment corroborating his claimed inability to file a timely opposition.

Second, while Defendants supposed evidence of duress would be important to their defense, this evidence, presented here in the form of Nicolosi's affidavit, was clearly available to Defendants prior to when the summary-judgment opposition was due. This was not evidence that had to be elicited through discovery or obtained from a third party, but Defendants' own statements.[43] As discussed above, Defendants have not provided a good reason for not timely

---

[41] R. Doc. 39-1 at 5.
[42] R. Doc. 35.
[43] Lique questions whether Nicolosi's "self-serving" affidavit, even if considered, could be sufficient to defeat summary judgment since its assertions contradict statements Nicolosi made in prelitigation emails and

providing this readily available evidence to the Court in opposition to the motion for summary judgment.[44]

Finally, Lique will suffer unfair prejudice if this case is reopened. Lique's relationship with Defendants began in 2014. Nicolosi admitted at some point thereafter that he stole $167,600 from Lique because he "lost control of his money due to personal issues."[45] Lique has been trying to recoup its losses ever since, first by entering into the settlement agreement and then by pursuing this litigation. In its opposition to the present motion, Lique reviews at length Defendants' recalcitrant conduct in failing to respond to discovery requests and resisting the setting of, and ultimately cancelling, Nicolosi's deposition. This behavior culminated in Defendants' failure to oppose the motion for summary judgment. Reopening the matter at this juncture, given the attendant prejudice to Lique, is not warranted when Defendants have not shown good cause for their failure to meaningfully participate in the litigation.

---

documents. R. Doc. 42 at 12-15 (citing R. Doc. 42-2). *See, e.g., Rensel v. Centra Tech, Inc.*, 2018 WL 4410110, at *14 (S.D. Fla. June 14, 2018) (holding that declarations of nonmovants' corporate officers were not competent to demonstrate the existence of genuine issues of material fact to defeat summary judgment where they were contradicted by nonmovants' own documents); *Sierra v. Ocwen Loan Servicing, LLC*, 2012 WL 527940, at *5 (S.D. Tex. Feb. 16, 2012) (holding that, without more, self-serving and after-the-fact affidavits contradicted by documents contemporaneous to events in question will not defeat a motion for summary judgment); *Archie v. State Farm Fire & Cas. Co.*, 813 F. Supp. 1208, 1213 (S.D. Miss. 1992) (holding that statements in affidavit of nonmoving party that were flatly contradicted by written correspondence did not preclude grant of summary judgment to moving party). The Court need not reach this issue, though, because the other *Lavespere* factors weigh so heavily against reopening this matter.

[44] Defendants contend that the Court could have gleaned such evidence from Nicolosi's unverified *pro se* answer to Lique's original complaint, and his attorney-filed answer to the amended complaint, in which he alleged that the settlement agreement was invalid due to error and duress. R. Docs. 6 at 3; 21 at 3-4. However, absent verification, these unsworn pleadings do not constitute summary-judgment evidence to support those assertions. *See, e.g., King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (refusing to permit *pro se* litigant to rely on an unverified pleading to defeat a motion for summary judgment); *Rodriguez v. Bexar Cty. Hosp. Dist.*, 2015 WL 7760209, at *20 (W.D. Tex. Nov. 30, 3015) (same). Moreover "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[45] R. Doc. 35-4 at 1-2.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to alter or amend the judgment (R. Doc. 39) is DENIED.

New Orleans, Louisiana, this 7th day of October, 2021.

                                          BARRY W. ASHE
                                        UNITED STATES DISTRICT JUDGE